**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| GIANT EAGLE, INC. and RISER FOODS COMPANY, | ) ) ) | |
| | ) | Civil Action No. 2:25-cv-0545 |
| Plaintiffs, | ) ) | Magistrate Judge Patricia L. Dodge |
| v. | ) ) | |
| | ) | |
| WATER TOWER SQUARE LIMITED PARTNERSHIP, | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**[1]

Giant Eagle, Inc. and Riser Foods Company (sometimes collectively, "Plaintiffs") bring this action against Water Tower Square Limited Partnership ("Defendant"). Plaintiffs' claims stem from the alleged breach of a long-term lease agreement for a supermarket located in North Olmsted, Ohio.

Pending before the Court is Defendant's Motion to Dismiss or, Alternatively, to Transfer to a Proper Venue (ECF No. 23). For the reasons that follow, the motion will be granted such that this action will be transferred to the District Court for the Northern District of Ohio pursuant to 28 U.S.C. § 1404(a).

I.    **Relevant Factual and Procedural Background**

A.  **The Lease Agreement**

Defendant owns the Water Tower Square Shopping Center (the "Shopping Center") located in North Olmsted, Ohio. (ECF No. 1 ¶ 4.) In 1998, Plaintiffs entered into a long-term

---

[1]  In accordance with 28 U.S.C. § 636(c), the parties have consented to full jurisdiction by a United States Magistrate Judge. (ECF No. 17.) The undersigned therefore has authority to conduct all proceedings and enter final judgment.

commercial lease agreement with Defendant as landlord (the "Lease"). Plaintiffs have been operating a Giant Eagle supermarket location in the Shopping Center ever since. (*Id.* ¶¶ 10-13.)

Under the Lease terms, Plaintiffs lease only lease the "Premises," which consists "exclusively of the actual physical supermarket itself (i.e., the physical building from which Giant Eagle sells merchandise), and does not include the "Common Areas." (*Id.* ¶ 16.) "Common Areas" is defined as all exterior areas available for joint use and benefit of Defendant, Plaintiffs, and other tenants, "including but not limited to parking areas, parking spaces . . . ." (*Id.* ¶ 17).

The parties' obligations regarding maintenance and operation of both the Premises and Common Areas are also outlined. The Lease provides that Defendant "undertakes and assumes all duties, responsibilities, and liabilities" regarding supervision, security, and control of all Common Areas. (*Id.* ¶ 18.) Defendant is required to maintain a minimum of $7 million in liability insurance coverage on "all Common Areas and structural components of the Shopping Center and shall name Tenant as an additional insured." (*Id.* ¶ 21.) The Lease also contains an indemnification clause. (*Id.* ¶¶ 19-20.)

### B. Underlying Incident

On June 3, 2024, Margot Wood and her three-year-old son were walking to their car in the parking lot of the Shopping Center when they were violently attacked by a woman with a knife. Mrs. Wood was seriously injured as a result and her child tragically died. (*Id.* ¶ 38.) The Wood family filed suit against Giant Eagle and two employees in the Court of Common Pleas of Cuyahoga County, Ohio, seeking damages arising from the attack (the "Ohio litigation"). The lawsuit asserted claims for: (1) premises liability, negligence and/or recklessness; (2) negligence;

(3) negligence per se; and (4) loss of consortium.[2] (*Id.* ¶¶ 46-49.)

After the Wood family filed suit, Plaintiffs provided notice of the action to Defendant and its insurance carrier, Cincinnati Insurance Company ("CIC"). (*Id.* ¶ 56.) Plaintiffs ultimately learned that they were not named as an additional insured under Defendant's insurance policy.[3] CIC therefore took the position that it had no duty to defend Giant Eagle in the Ohio litigation. (*Id.* ¶¶ 56-64.)

### C. Federal Lawsuit

Plaintiffs filed the present federal action on April 22, 2024, alleging that Defendant breached the Lease by failing to procure insurance coverage and by failing to indemnify Plaintiffs in connection with the Ohio litigation. The Complaint asserts diversity subject matter jurisdiction, 28 U.S.C. § 1332(a)(1).[4] Plaintiffs Giant Eagle, Inc., a Pennsylvania corporation, and Riser Foods Company, a Delaware corporation, share a principal place of business in Cranberry, Pennsylvania. (*Id.* ¶¶ 1-2.) Defendant is an Ohio limited partnership with its principal place of business in Westlake, Ohio. (*Id.* ¶ 3.) With respect to venue, the Complaint contains the following paragraph:

> Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to Plaintiffs' claims occurred in this district, including but not limited to Defendant's refusal and failure to abide by its obligations to its Pennsylvania-based tenant (Giant Eagle) for such tenant's benefit in Pennsylvania, including its failure and refusal to add Giant Eagle as an additional insured and/or make the payments required pursuant to the Lease to Giant Eagle.

(*Id.* ¶ 31.)

Defendant answered the Complaint on June 26, 2025, and filed an amended Answer on

---

[2]  The Ohio litigation remains pending in the Court of Common Pleas of Cuyahoga County as of March 17, 2026. *See* Wood, et al. v. Giant Eagle, Inc., et al., No. CV-24-105323.

[3]  The parties filed a joint stipulation that attached a certified copy of the applicable CIC insurance policy. (ECF No. 30.)

[4]  The amount in controversy requirement is not in dispute. (ECF No. 1 ¶ 27.)

July 16, 2026. In both filings, Defendant raised, *inter alia*, lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted as affirmative defenses. (ECF No. 13 ¶¶ 111-113; ECF No. 16 ¶¶ 111-113.)

The Court issued a Rule 16.1 Scheduling Order (ECF No. 15) and conducted an Initial Case Management Conference (ECF No. 20). For good cause shown, certain pretrial deadlines and an ADR process were deferred pending the filing of contemplated motions by both parties. (ECF No. 21.)

On August 29, 2025, Plaintiffs moved for judgment on the pleadings as to Count I (Breach of Lease).[5] (ECF No. 25.) That same day, Defendant moved to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), and/or improper venue under Rule 12(b)(3). Alternatively, Defendant sought transfer of this action pursuant to 28 U.S.C. § 1406 or 28 U.S.C. § 1404(a). (ECF No. 23.) Defendant's motion has now been fully briefed (ECF Nos. 24, 35, 36, 41), and is ready for disposition.

II.    **Legal Standard**

While venue is initially determined by the plaintiff's preference, § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). *See also Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 132 (3d Cir. 2020) (noting district court may transfer case at request of party or sua sponte under 28 U.S.C. § 1404(a)); *Bent Glass Design v. Scienstry, Inc.*, 2014 WL 550548, at *6 (E.D. Pa. Feb.

---

[5] Plaintiffs' motion has been fully briefed (ECF Nos. 26, 34, 42), and is ready for disposition. Because the resolution of Defendant's motion results in transfer of this action to the Northern District of Ohio, the Court declines to resolve the motion for judgment on the pleadings.

4

12, 2014) ("[A] district court may upon motion or sua sponte dismiss or transfer a civil action to any other district in the interest of justice and/or for the convenience of parties and witnesses.").

In *Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995), the Third Circuit provided a non-exhaustive list of factors to consider when determining whether transfer is appropriate under § 1404(a):

> In ruling on § 1404(a) motions, courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum. While there is no definitive formula or list of the factors to consider, courts have considered many variants of the private and public interests protected by the language of § 1404(a).
>
> The private interests have included: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).
>
> The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Jumara*, 55 F.3d at 879-80 (citation modified). District courts therefore have broad discretion in making determinations under § 1404(a), and convenience and fairness are considered on a case-by-case basis. *Bent Glass*, 2014 WL 550548, at *7 (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, (1988)); *see also Baez v. Prison Health Servs., Inc.*, 2009 WL 2776535, at *3 (E.D. Pa. Aug. 27, 2009) ("When deciding . . . whether to transfer venue under § 1404(a), a court should

5

not limit itself solely to the factors enumerated in § 1404(a), but should consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer.").

### III.   Discussion

#### A.  28 U.S.C. § 1391

To begin, the Court must first assess whether this action could have been brought in the proposed transferee district. *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970) (citing *Van Dusen v. Barrack*, 376 U.S. 612 (1964). The general venue provisions of 28 U.S.C. § 1391 allow a plaintiff to bring suit in: (1) a judicial district in which any defendant resides if all defendants reside in the state in which that district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property subject to the action is situated; or (3) if there is no district in which the action may otherwise be brought, in a judicial district in which any defendant is subject to the court's personal jurisdiction. 28 U.S.C. § 1391(b).

Defendant seeks transfer to the Northern District of Ohio. It is undisputed that Defendant resides within that district. Additionally, as Plaintiffs concede, where negotiation and execution of a contract occur across state lines, "it is more appropriate to say that a substantial part of the events occurred in both locations simultaneously." (ECF No. 35 at 15) (citing *It's Intoxicating, Inc. v. Maritim Hotelgesellschaft mbH*, 2013 WL 3973975, at *12 (M.D. Pa. July 31, 2013)). Thus, venue lies in the Northern District of Ohio.

#### B.  Private Interest Factors

Having determined that this action could have been brought in the proposed transferee

district, the Court now turns to the *Jumara* factors. Private interest factors relate to the convenience of the parties and witnesses, as well as "all other practical problems that make trial of a case easy, expeditious and inexpensive[.]'" *Petrol. Serv. Co. v. Santie's Wholesale Oil Co.*, 2024 WL 816619, at *6-7 (M.D. Pa. Feb. 27, 2024) (citing *In re: Howmedica Osteonics Corp.*, 867 F.3d 390, 402 n.7 (3d Cir. 2017)).

A plaintiff's choice of forum is ordinarily entitled to significant deference. *Shutte*, 431 F.2d at 25. That preference, however, is not dispositive, nor is it the only factor that the court must consider. "Although plaintiff's forum choice will always weigh against transfer under Section 1404(a), it is a case-specific question as to how much weight this factor should be given overall." *Petrol. Serv.*, 2024 WL 816619, at *3. After all, if the plaintiff's choice of forum were always given "'paramount consideration,' it would make no sense to list the defendant's preference as a factor to be weighed, *Jumara*, 55 F.3d at 879, because by definition in any venue transfer situation the defendant will have moved to transfer the case to a venue that the plaintiff does not favor." *Allied Erecting & Dismantling Co. v. U.S. Steel Corp.*, 2016 WL 7442397, at *4 (W.D. Pa. Nov. 22, 2016), *report and recommendation adopted*, 2016 WL 7404586 (W.D. Pa. Dec. 22, 2016).

Plaintiffs contend that its original choice of forum is the "paramount consideration" in the Court's venue analysis. They argue that by entering into a sustained and deliberate relationship with Giant Eagle, Defendant bound itself to Pennsylvania through the very contact provisions that now give rise to this lawsuit. (ECF No. 35 at 1.)

Defendant disputes Plaintiffs' characterization of this action as merely asserting breach of contract claims, contending that this oversimplifies the dispute. Defendant argues that the operative allegations in the Complaint pertain to the terms of a Lease governed by Ohio law

7

through which Plaintiffs leased property in an Ohio shopping center in order to operate a supermarket in Ohio. Plaintiffs' claims in this case were triggered when the Wood family filed a lawsuit in Ohio state court. The Wood family's lawsuit seeks damages under Ohio law for the tragic events that occurred in the parking lot of the Ohio shopping center. Defendant's alleged duty to indemnify Plaintiffs turns on the outcome of the Wood lawsuit. Defendant similarly contends that Plaintiffs' additional insured claim arises from Defendant's dealings with CIC, an Ohio-based insurance company. *See* ECF No. 41 at 8-12.

A plaintiff's preference is often afforded less weight where the operative facts of the action occurred in another forum. *See, e.g.*, *Zokaites v. Land-Cellular Corp.*, 424 F. Supp. 2d 824, 840 (W.D. Pa. 2006) (finding plaintiff's preferred forum entitled to less weight where complaint sought "to impose equitable directives on a foreign corporation whose property and operations are located in Southern Florida"); *Petrol. Serv.*, 2024 WL 816619, at *3 (affording plaintiff's preferred forum less deference where "most, if not all, of the operative facts" occurred out of district). While Plaintiffs' claims do indeed arise from the Lease, the Court agrees with Defendant that the claims must be viewed in the proper context. The Lease obligations that Plaintiffs seek to enforce arise directly from Defendant's alleged responsibilities concerning the operation and safety of the Shopping Center, located in North Olmsted, Ohio. A violent attack occurred in the Shopping Center's parking lot, thereby triggering the relevant provisions of the Lease that Plaintiffs now seek to invoke. Moreover, the security practices, maintenance obligations, and insurance coverage contemplated in the Lease was negotiated for and implemented at the leased property.

It is clear that the obligations in the Lease are inextricably tied to the operation of the Ohio property and to the tragic events that occurred there on June 3, 2024. Thus, the Court concludes

that the center of gravity of this dispute lies in Ohio, not Pennsylvania. Under these circumstances, the forcefulness of the presumption created by Plaintiffs' choice of forum is appropriately diminished. Moreover, the Court concludes that the third *Jumara* factor weighs heavily in favor of transfer.

As to the convenience of the parties and witnesses, courts are "only required to consider the convenience of witnesses 'to the extent that they may actually be unavailable for trial in one of the fora.'" *Petrol. Serv.*, 2024 WL 816619, at \*5 (quoting *Scanlan v. Am. Airlines Grp., Inc.*, 366 F. Supp. 3d 673, 678 (E.D. Pa. 2019)). Although Defendant argues that it "has no officers, employees, property, or business operations in Pennsylvania," (ECF 24 at 16), it has failed to show that defending the action in this district impose a substantial burden. This factor is therefore neutral.

The Court may also consider the physical location of evidence. Courts typically place less emphasis on this factor in the age or modern technology and advancements in electronic discovery. *See Bluebeck Holdings, Ltd. v. SWN Prod. Co., LLC*, 2024 WL 4536952, at \*6 (M.D. Pa. Oct. 21, 2024). That said, records concerning the operation, insurance coverage, and maintenance of the Shopping Center are likely maintained in Ohio. Because the Lease dates back to 1998, this factor weighs at least slightly in favor of transfer.

### C. Public Interest Factors

Consideration of the public interest factors "requires the court to evaluate each forum and determine where the litigation can proceed in the most efficient and inexpensive fashion." *Petrol. Serv.*, 2024 WL 816619, at \*6. Courts have long recognized a local interest in having localized controversies decided at home. *See, e.g.*, *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947). As

discussed, while Plaintiffs' claims arise in contract, the dispute is closely tied to the management and safety of the Ohio property. The Lease concerns a shopping center held open to the public in Ohio, and the contractual obligations at issue relate directly to responsibilities concerning the supervision and security of that property. The State of Ohio therefore has a strong local interest in resolving this dispute, as it is directly connected to the operation and safety of property within its borders. Thus, this favor favors transfer.

Practical considerations also support transfer. The underlying tort litigation stemming from the June 2024 attack is already pending in the Ohio state court. Although the claims here concern contractual obligations between the parties, the allegations are closely tied to the same incident and may involve overlapping discovery regarding security practices, insurance coverage, and responsibility for the Common Areas of the Shopping Center. Litigating this dispute in Ohio will therefore promote efficiency and reduce the risk of inconsistent factual determinations.

Finally, as Defendant points out, although the Lease contains no jurisdiction or venue provisions, it does provide that the agreement is governed by, construed, and enforced in accordance with Ohio law. (ECF No. 1 at 91.) Although federal courts often apply the law of other states, it is fair to say that a federal court sitting in Ohio is more familiar with Ohio state law.

## IV.    **Conclusion**

Having considered the relevant private and public interest factors governing transfer, the Court concludes that the interests of justice support transferring this case to the United States District Court for the Northern District of Ohio. Because the Court concludes that transfer is appropriate under 28 U.S.C. § 1404(a), it declines to reach Defendant's personal jurisdiction arguments and expresses no view on the merits of such arguments.

An appropriate order will follow.


March 23, 2026                                    /s/ Patricia L. Dodge
                                                 PATRICIA L. DODGE
                                                 United States Magistrate Judge